IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| JANICE RARDIN, <br><br> Plaintiff, <br><br> v. <br><br> MADRID HOME FOR THE AGING d/b/a CEDAR'S OF MADRID HOME, KEITH KUDEJ, and DEANNA FISHER <br><br> Defendants. | CASE NUMBER:12-278 <br><br> **COMPLAINT AND JURY JURY DEMAND** |

**COMES NOW** the Plaintiff, Janice Rardin, and for her complaint against the Defendants, respectfully states the following:

## INTRODUCTION

1. This is an action alleging age and disability discrimination, retaliation relating to the Family and Medical Leave Act rights, and for wrongful discharge in violation of the public policy of Iowa.

2. Federal question jurisdiction lies in this Court for the claims in this action pursuant to 29 U.S.C. Sec. 621 for violations under the Age Discrimination in Employment Act (ADEA) for age discrimination, pursuant to 42 U.S.C. Sec. 12101 for violations of the Americans with Disabilities Act (ADA) for disability discrimination, pursuant to 28 U.S.C. Sec. 1331 and 29 U.S.C. Sec. 2601 for violations of the Family and Medical Leave Act of 1993 (FMLA). Pendent jurisdiction of state claims exists under 28 U.S.C. Sec. 1367.

1

## FACTUAL BACKGROUND

3. At all times pertinent hereto, Plaintiff, Janice Rardin (hereinafter "Rardin"), was and is a resident of Boone County, Iowa.

4. At all times pertinent hereto, Defendant, Madrid Home for the Aging d/b/a Cedar's of Madrid Home (hereinafter the "Home") was and is a corporation formed under the laws of the State of Iowa with a principal place of business in Boone County, Iowa. The Home represents to the community at large that it serves "with Christian Compassion."

5. Upon information and belief, Defendant, Keith Kudej (hereinafter "Kudej") is a resident of the State of Iowa in Boone County, Iowa and an employee of the Home.

6. Upon information and belief, Defendant, Deanna Fisher (hereinafter "Fisher") is a resident of the State of Iowa in Boone County, Iowa and an employee of the Home.

7. At all pertinent times, Kudej was the CEO of the Home.

8. At all pertinent times, Fisher was the Home's Administrator and Rardin's direct supervisor.

9. Defendants Kudej and Fisher were at all times herein acting in their capacity as employees and/or agents of the Home and within the scope of their employment.

10. Plaintiff began employment for the Home in May 2006 as a RN Services Coordinator.

11. Plaintiff was given annual pay raises as an indication of her job performance being at or above satisfactory levels every year of her employment.

12. Plaintiff received no discipline in her first three years of employment at the Home. In July 2009, Plaintiff received a written counseling having to do with filing certain information. Thereafter, Plaintiff was not disciplined for 22 additional months while employed at the Home.

13. In 2010, one of Kudej's close family members became a resident (hereinafter the "Family Member") at the facility where Plaintiff worked.

14. Over time, the Family Member developed foot sores that were not healing. Plaintiff and members of the Home's staff provided care for the Family Member to address this health issue but given the Family Member's other health issues, the wounds would not heal and were, in fact, worsening.

15. Plaintiff and other staff members at the Home believed that the Family Member needed a higher level of care than what could be provided at the Home. Plaintiff, being in a leadership position at the Home, advised Kudej of the staff's concern and her desire to see the Family Member receive a higher level of care.

16. Specifically, Plaintiff advised Kudej that his Family Member should be referred to wound management clinic so that the wound could heal and adverse consequences like amputation could be avoided.

17. Kudej dismissively rejected the concerns shared by Plaintiff and other members of the Home's staff.

18. Plaintiff and the Home's staff continued to try and provide appropriate care to the Family Member. Nevertheless, the Family Member's condition continued to worsen. Plaintiff continued to express her concerns to Kudej about his Family Member's need for a higher level of care and Kudej, even though he lacked any medical training, angrily rejected any recommendation from Plaintiff or other Home staff members that his Family Member needed a higher level of care.

19. In April 2011, Plaintiff developed a medical condition that required surgical repair for a torn meniscus and cartilage damage. Plaintiff advised the Home of her condition and the

fact that she would need to schedule surgery that would require her to miss work during her recovery period for as much as two weeks' time.

20. After Plaintiff advised the Home of her condition and need for leave for surgery and recovery time, Plaintiff was given a verbal warning for a supposed violation of policy involving the training of subordinate staff. The verbal warning was related to a staff member that was providing care to the Family Member and who was performing care the staff member had been trained on and had previously demonstrated an ability to competently perform.

21. The verbal warning given to Plaintiff was in retaliation for her request for medical leave to seek necessary surgery and for her continued advocacy for the well-being of Kudej's Family Member; advocacy that was consistently rejected despite the lack of improvement and, in fact, worsening condition of the Family Member.

22. Plaintiff had surgery on June 30, 2011. Prior to her surgery, Plaintiff advised the home that her recovery could take as much as two weeks before she was returned to work.

23. While on leave recovering from surgery, Plaintiff was advised that her leave had upset management because they were required to temporarily cover her job assignments.

24. Plaintiff returned to work on July 11, 2011. Plaintiff was still recovering from surgery and had some limitations on her mobility at that time.

25. Upon returning to work, Plaintiff was in her office and Fischer entered and said they needed to have a meeting. During that meeting, Plaintiff was advised that she was being suspended from her job effective immediately. Plaintiff asked Fischer why she was being suspended but was given no specifics. Fischer carried out the act of suspending Plaintiff as directed, upon information and belief, by Kudej.

26. The Home has an Employee Handbook which it follows that covers, amongst other things, a policy of progressive discipline.

27. The Home did not follow its own policy in suspending Plaintiff immediately upon her return from medical leave. No verbal warning was given Plaintiff prior to the immediate suspension. No written warning was given Plaintiff prior to the immediate suspension.

28. Upon being suspended and told to leave the Home's facility, Plaintiff fell in the Home's parking lot en route to her automobile.

29. As a result of her fall, Plaintiff sought medical treatment and informed the Home's worker's compensation carrier of the accident under the belief that it was a covered work related incident.

30. While on "suspension" Plaintiff was not contacted or asked to provide information as part of any fact finding investigation conducted by the Home pursuant to its own policies.

31. While on suspension Plaintiff was advised by Fischer that if she resigned the Home would pay her some severance.

32. Plaintiff did not resign.

33. On July 18th, the Home, through Fischer who was, upon information and belief, acting at the direction of Kudej, wrongfully terminated Plaintiff's employment. There was no further progressive discipline. There was no fact finding report or an indication of why Plaintiff's supposed conduct was grounds for immediate termination. There was no review prior to dismissal. All of which were steps required by the Home's own policies.

34. Kudej and Fischer were acting at all times within the scope of their employment at the Home.

35. The Home's letter of termination stated that Plaintiff was supposedly terminated for a "series of job performance issues related to documentation, staff training and nursing assessment." The Home's purported reason for termination was pretextual.

36. The Home's purported reason was given over two months after plaintiff was given a verbal warning about work place issues.

37. The Home's purported reason was given over two years after plaintiff was given a written warning about work place issues.

38. Shortly after Plaintiff's termination a much younger woman was hired to perform her duties.

39. The woman hired as Plaintiff's replacement had been previously terminated from a prior position with the Home.

40. The woman hired to replace Plaintiff was not yet eligible for rehire under the Home's own policies.

41. On August 22, 2011 Plaintiff filed a complaint with the Iowa Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on based on age and disability.

42. On March 28, 2012, Plaintiff received a Right to Sue Letter from the ICRC.

43. In May 2012, Plaintiff received a Right to Sue letter from the EEOC.

44. This suit is timely filed and after the receipt of such right to sue releases.

## COUNT I – FAMILY MEDICAL LEAVE ACT-RETALIATION

45. Plaintiff restates paragraphs 1-44.

46. Plaintiff requested leave due to a qualifying condition.

47. Defendants knew that Plaintiff was taking protected leave and returning from said leave.

48. Defendants took adverse employment actions against the Plaintiff, including termination, in part based on the Plaintiff's request for and taking of medical leave.

49. The Defendants' actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT II – AGE DISCRIMINATION IN EMPLOYMENT ACT

50. Plaintiff restates paragraphs 1-44.

51. Plaintiff was 60 years of age at the time of her termination.

52. Defendants discriminated against Plaintiff based on her age.

53. Defendants took adverse employment actions against the plaintiff to include termination.

54. The Defendants' actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT III – AGE DISCRIMINATION (IOWA CIVIL RIGHTS ACT)

55. Plaintiff restates paragraphs 1-44.

56. Plaintiff was 60 years of age at the time of her termination.

57. Defendants discriminated against Plaintiff based on her age.

58. Defendants took adverse employment actions against the plaintiff to include termination.

59. The Defendants' actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT IV – DISABILITY DISCRIMINATION (AMERICAN WITH DISABILITIES ACT)

60. Plaintiff restates paragraphs 1-44.

61. Defendants discriminated against the Plaintiff based on regarding her as disabled.

62. Defendants took adverse employment actions against the Plaintiff to include termination.

63. Defendants' adverse employment actions were based in part on regarding the Plaintiff as disabled.

64. The Defendants' actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT V – DISABILITY DISCRIMINATION (IOWA CIVIL RIGHTS ACT)

65. Plaintiff restates paragraphs 1-44.

66. Defendants discriminated against the Plaintiff based on regarding her as disabled.

67. Defendants took adverse employment actions against the Plaintiff to include termination.

68. Defendants' adverse employment actions were based in part on regarding the Plaintiff as disabled.

69. The Defendants' actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT VI – WRONGFUL DISCHARGE

70. Plaintiff restates paragraphs 1-44.

71. During Plaintiff's employment she repeatedly attempted to obtain more advanced medical care for the Family Member.

72. Plaintiff appropriately reported her concerns for the Family Member's declining condition based on Kudej's refusal to consider additional care for the Family Member.

73. Plaintiff made these reports to both Kudej and Fischer.

74. Plaintiff made these reports as a licensed healthcare professional concerned about the possible neglect of an aged Family Member who was being refused additional medical care by Kudej and the Home.

75. Defendants retaliated against Plaintiff for her engaging in such protected activity.

76. Defendants took adverse employment action against Plaintiff, to include termination, for her efforts to protect the welfare of the Family Member.

77. Defendants' actions were in violation of the public policy of the State of Iowa that favors protecting senior citizens and the welfare of patients in assisted living facilities.

78. Defendants' actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT VII – WORKER'S COMPENSATION RETALIATION

79. Plaintiff restates paragraphs 1-44.

80. Plaintiff reported her parking lot fall to the Home's worker's compensation carrier as a work related injury.

81. Defendants retaliated against Plaintiff for her engaging in such protected activity.

82. Defendants took adverse employment action against Plaintiff, to include termination, for her acts to seek recovery for a work related injury.

83. Defendants' actions were in violation of the public policy of the State of Iowa that favors protecting workers that sustain workplace injuries and make claims for benefits under Iowa's Worker's Compensation laws.

84. Defendant's actions were the direct and proximate cause of damages to the Plaintiff.

## COUNT VIII – PERSONAL INJURY

85. Plaintiff restates paragraphs 1-44.

86. When Plaintiff was advised of her suspension she was instructed to take her personal belongings to her vehicle and leave the Home.

87. Plaintiff exited carrying personal items and, as a consequence, her view was partially obstructed.

88. Plaintiff exited the Home thru a patio type area that entered the parking lot.

89. As the patio area merged into the parking lot there was a drop in elevation that created an unreasonable risk of injury to a person in Plaintiff's position.

90. The Home knew or through the exercise of reasonable care should have known of this unsafe condition.

91. The change in elevation was not a condition Plaintiff would have realized given the fact that she was carrying personal items to her vehicle and had a partially obstructed view.

92. The Home knew Plaintiff would be carrying items to her vehicle because Fisher had instructed Plaintiff to remove those items.

93. The Home could and should have anticipated that the unsafe condition was such that someone like the Plaintiff could be harmed as a result of the condition.

94. The Home was negligent in failing to protect the plaintiff by failing to do all or any of the following: (a) correct the unsafe condition; or (b) adequately mark or warn of the unsafe condition so that someone exiting the Home with parcels could appreciate the risk of harm.

95. The Home's negligence was a proximate cause of the Plaintiff's damage.

## AS TO ALL COUNTS

96. As a result of the aforesaid, the Plaintiff has lost and will in the future lose wages, has incurred medical expenses and will in the future incur medical expenses, has lost function of her mind and body and suffered great emotional and physical pain and suffering and incurred such other damages as are shown by the evidence.

97. As a result of the aforesaid, the Plaintiff has been damaged in a sum to be determined as reasonable and proper.

98. The actions of the Defendants, and each of them, were directed at Plaintiff and are such as to justify the imposition of punitive or exemplary damages in an amount deemed reasonable and proper and within an amount as allowed by law.

99. This Court should award to Plaintiff her appropriate attorney fees in the processing of this action.

**WHEREFORE**, the Plaintiff prays the Court:

A. Enter judgment that Defendants' wrongful course of conduct violated Plaintiff's rights as alleged;

B. Issue a mandatory injunction and direct the Defendants to rehire the Plaintiff retroactive to July 18, 2011 with appropriate promotion or to her prior position as allowed under the law, all with appropriate wage and benefits;

C. Issue a mandatory injunction directing Defendants to reinstate all of Plaintiff's employment benefits, including but not limited to, health insurance, retroactive to July 18th, 2011;

D. Enter judgment against Defendants in favor of Plaintiff for the monetary losses Plaintiff has sustained as a direct result of Plaintiff's discharge;

E. Enter judgment against Defendants in favor of Plaintiff for a sum determined as reasonable and proper for compensatory damages;

F. Enter judgment against Defendants in favor of Plaintiff for punitive damages in an amount deemed reasonable and proper if and as allowed by law;

G. Enter judgment against Defendants in favor of Plaintiff for reasonable attorney's fees and costs incurred by Plaintiff in connection with the instant action; and;

H. Award Plaintiff such further and additional relief, including back pay, loss of future pay and/or front pay, for interest and costs and for such other and further relief as the Court deems just and proper.

WHEREFORE, Plaintiff requests judgment be entered on all of the counts noted above, damages be awarded in an appropriate amount, for reasonable attorney's fees, for costs of this action and fir such further relief as the Court deems just.

Plaintiff demands trial by jury.


Respectfully Submitted by:


    /S/Jim Quilty
Jim Quilty  AT0006455
QUILTY LAW FIRM
699 Walnut Street, 4th Floor
Des Moines, IA 50309
515-661-6338
515-724-5801(fax)
quiltyclf@aol.com
ATTORNEY FOR THE PLAINTIFF